Staples J.
delivered the opinion of the court.
It is very clear that the contract of 1st April 1861 was not a sale by Mswander to the appellant Coffman; it was not even a surrender by the former to the latter of any interest in the land, for he had none, legal or equitable. It was the mere substitution of a new contract for the old one, which by its own terms was ended, and which the parties did not choose to renew. It was a new sale to the same purchaser upon terms acceptable to each. The arrangement interfered with no liens or incumbrances created by the act of Ms-wander the purchaser, because none such were in existence. It did not divert the debtor’s property from the just claims of creditors, because the vendor only retained the title as a security for what was justly due him, and for other debts of the purchaser for which he was bound as surety. These debts were as valid and meritorious as those due the appellees, and it was eminently just and proper to provide for their payment to the relief of the appellant as surety.
The main reliance of the appellees, however, is upon the failure to record the contract of April 1861. This view is based upon an entire misconception of the *743 respective position of the parties. There would be great force in it if Niswander the purchaser was asserting title against Coffman’s creditors under a con tract never recorded. But in this case it is the creditors of the purchaser who are attempting to enforce their liens against the property. They may stand in the purchaser’s shoes, and subject his interest, whatever it may he, to their debts; but they have no further claim.
The common law courts, indeed, do not regard the owner of an equitable title as having any estate whatever. They treat a contract to convey merely as a personal covenant, the breach of which is only to be compensated in damages. Courts of equity, on the other hand, consider the purchaser, though without the legal title, as the owner of the land; but this is only where he has fully complied with all the terms of the sale, and is entitled to call for the conveyance without any conditions imposed. This right is in subordination to the legal title. A court of equity will never compel the vendor to part with that title until the conditions are fully performed upon which he agreed to make the conveyance. If the purchaser himself cannot compel a conveyance, neither can his creditors. The failure to record the contract can therefore neither enlarge their remedies, nor diminish the rights of the vendor.
It is improper to say that parties may be misled by the apparent ownership of the purchaser. Persons who deal with one in possession of real estate are required to look to the records. If upon examination they find no evidence of title, they trust the occupant at their peril. Had the appellees searched the registry they would have learned that he had neither a legal nor an equitable title, and that Coffman appeared as the sole owner. Had they applied to Coffman himself *744 they would have ascertained the nature of Hiswander’s interest^ and the terms upon which he was entitled to a conveyance. If indeed they have been misled, it is result of their own negligence in failing to make such enquiry as would have placed them in possession of the necessary information.
Occupying no higher ground than their debtor, these creditors can only require the appellant to convey the property when his purchase money is paid and he is indemnified as surety for the debts specified in the article of agreement.
It is recited in the decree, that upon the admission of the parties, the appellant has already paid, since the institution of the suit, the sum of eleven hundred dollars, as the surety of Hiswander. And as the property brought only that sum at the sale under the decree, the proceeds of sale in the appellant’s hands, as purchaser at that sale, will be more than absorbed by the amount of his claims. It would seem, therefore, that a decree might at once be entered in his favor. Under the circumstances, however, it is deemed most advisable to reverse the decree of the Circuit court, and to remand the case for further proceedings in accordance with the views herein expressed.
The decree was as follows:
This day came again the parties by counsel; and the court having maturely considered the transcript of the record of the decree aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the Circuit court erred in holding that the appellees are entitled to priority over the appellant in the distribution of the proceeds of the sale of the house and lot sold by the appellant to John His wander. It is therefore adjudged, ordered *745 ■and decreed, that so much of the decree of 8th day of February 1875 as directs the payment of the balance of said proceeds to Abraham Blosser, Jr., adminis trator de bonis non of Anna Blosser deceased, after paying and satisfying the lien of the appellant, be reversed and annulled, and that the appellees do pay to the appellant his costs by him expended in the prosecution of his appeal aforesaid here. And this court, proceeding to render such decree as the said Circuit court ought to have rendered, is of opinion, that the appellant Coffman, out of the proceeds of sale of the house and lot aforesaid, is entitled in preference to the appellees, to be satisfied, first the amount of the purchase money due him, to-wit, the sum of $554.10 cents, with interest on $276, part thereof, from the 15th day of January 1875; second, he is entitled to be repaid whatever sum or sums he may have heretofore paid, or may hereafter pay, or may be justly liable for, as the surety of John Uiswander upon the debts of the latter to Lucy Jane Williams and to Harvey Kyle, as set forth in the article of agreement of the 1st day of April 1861; and the residue of said proceeds, if any, to be paid to the administrator of Anna Blosser deceased. And the cause is remanded to the said Circuit court for further proceedings to be had therein in conformity with this decree: which is ordered to be certified to the said Circuit court of Rockingham county.
Decree reversed.